**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NATHAN RICHARD PAPPAL,<br><br>Plaintiff,<br><br>vs.<br><br>SOCIAL SECURITY ADMINISTRATION,<br><br>Defendant. | ) | 2:25-cv-01109 |

**OPINION**

In this social-security appeal, Plaintiff Nathan Pappal challenges the ALJ's RFC determination. As part of the RFC, he argues that the ALJ didn't sufficiently explain why she discounted certain medical source opinions. He further argues that the ALJ's failure to do so amounted to harmful error.

On careful review, the Court agrees. This is a bit of an odd case. The ALJ's opinion is very detailed and thorough. And the Court is not entirely convinced that the ALJ was wrong as to her ultimate finding of disability. However, the Court agrees that the ALJ opinion is deficient in one important respect. A critical part of the RFC finding was Mr. Pappal's cognitive fatigue: how much time could he work before being off task? Drs. Rea and Koch's opinion detailed significant cognitive fatigue. The ALJ found the opinion to be unpersuasive, but there are supportability and consistency problems with that conclusion. As such, the Court will remand.

**BACKGROUND**

## I. Procedural background.

Nathan Richard Pappal seeks judicial review of the Social Security Administration's decision denying his application for Supplemental Security Income under Title XVI of the Social Security Act. Mr. Pappal applied for social-security

benefits on January 11, 2022, alleging disability beginning March 24, 2020. ECF 4-2, at 18. The claim was initially denied on November 29, 2022, and again upon reconsideration on July 3, 2023. *Id.* Mr. Pappal then requested a hearing, which occurred April 25, 2024. *Id.* After the hearing, Mr. Pappal's claim was again denied on May 31, 2024. *Id.* at 15. Mr. Pappal's timely appeal of that denial is now before the Court.

**II. ALJ's decision.**

After a hearing on Mr. Pappal's application for Supplemental Social Security Income, the ALJ made the following findings under the five-step sequential analysis:

1. "The claimant last met the insured status requirements of the Social Security Act on December 31, 2023."
2. "The claimant did not engage in substantial gainful activity during the period from his alleged onset date of March 24, 2020 through his date last insured of December 31, 2023 (20 CFR 404.1571 *et seq.*)." [**STEP 1**].
3. "Through the date last insured, the claimant had the following severe impairments: traumatic brain injury with neurocognitive disorder, depression disorder, and anxiety disorder (20 CFR 404.1520(c))." [**STEP 2**].
4. "Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." [**STEP 3**].
5. "After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except:
   - no climbing of ladders, ropes, or scaffolds;
   - no exposure to workplace hazards such as unprotected heights or open moving machinery;

- the claimant can do occasional climbing of ramps and stairs, occasional balancing, stooping, kneeling, crouching, crawling;
- frequent bilateral handling and fingering;
- no operation of foot controls with the lower left extremity;
- the claimant is limited to understanding, remembering, and carrying out simple instructions and carrying out one or two-step tasks;
- the claimant is limited to using judgment to make simple work-related decisions and limited to occasional changes in a simple work routine;
- the claimant cannot perform work requiring a specific production rate (such as assembly line work or work requiring hourly quotas)." [**RFC**].

6. "Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565)." [**STEP 4**].
7. "The claimant was born on October 8, 1992 and was 31 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1564)."
8. "The claimant has at least a high school education (20 CFR 404.1564)."
9. "Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2)."
10. "Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a)." [**STEP 5**].

ECF 4-2, at 20–37.

In reaching her findings on Mr. Pappal's RFC, the ALJ considered, among other parts of the record, the opinions of three medical professionals: Sarah Rea, Ph.D., and Gary Koch, Ph.D., who are neuropsychological examiners; and Thomas A. Franz, M.D., who is Mr. Pappal's treating physiatrist. *Id.*

First, the ALJ found the opinion evidence offered by Drs. Rea and Koch "not persuasive." *Id.* at 34. Drs. Rea and Koch examined Mr. Pappal on May 8, 2023, for about two hours. ECF 4-7, at 390, 403. They observed that Mr. Pappal did not demonstrate difficulties sustaining his attention throughout testing but appeared to become fatigued at times. *Id.* at 392. They opined that Mr. Pappal's general intellectual abilities were within the average range. *Id.* Mr. Pappal scored in the average range across language and spatial reasoning tests. *Id.* at 393.

Drs. Rea and Koch further opined that Mr. Pappal demonstrated difficulty across memory tasks. *Id.* at 394. On two tasks requiring Mr. Pappal to recall verbal information presented in a story, Mr. Pappal was below average for immediate recall and "exceptionally low" for delayed recall. *Id.* On a verbal list learning test, Mr. Pappal was low average for immediate recall, but again "exceptionally low" for delayed recall. *Id.* When provided a forced choice format, Mr. Pappal could not recognize list words from distractor words. *Id.*

Drs. Rea and Koch filled out a Mental RFC Assessment based on this examination. ECF 4-7, at 403. They opined that Mr. Pappal "demonstrates deficits in memory, processing speed, and emotional functioning." *Id.* Drs. Rea and Koch opined, among other things, that Mr. Pappal was extremely limited in understanding, remembering, or applying information, and markedly limited in maintaining concentration, persistence, or pace. *Id.* at 407. They opined that Mr. Pappal's impairments would cause him to be miss work four or more days per month and, while at work, be unable to perform even simple tasks over 25% of the time. *Id.* at 407–08.

Second, the ALJ found the opinion evidence of Dr. Franz "not persuasive." ECF 4-2, at 35. Dr. Franz attested to reviewing Drs. Rea and Koch's neuropsychological evaluation and found it "an accurate description of the patient's mental limitations." ECF 4-7, at 413. Dr. Franz also opined that Mr. Pappal was extremely limited in

both understanding, remembering, or applying information, and managing concentration, persistence, or pace. *Id.* at 412. Dr. Franz opined that Mr. Pappal's impairments would cause him to miss work two days per month and, while at work, be unable to perform even simple tasks over 20% of the time. *Id.*

To provide further context for his opinion, Dr. Franz stated that "[Mr. Pappal's] impairments are lifelong" and that "variability can happen within a day up to several times/day." *Id.*

## DISCUSSION & ANALYSIS

### I. Legal framework.

Under the Social Security Act, an individual is eligible for Supplemental Security Income if (i) he is aged, blind, or disabled and (ii) his countable income and resources fall below certain statutory limits. 42 U.S.C. § 1382(a); *Kelley v. Comm'r of Soc. Sec.*, 566 F.3d 347, 349 (3d Cir. 2009). Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual will be found disabled only if his physical or mental impairment is so severe that he cannot engage in any kind of substantial gainful work in the national economy, regardless of whether such work exists in the immediate area in which he lives, whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

When reviewing a claim and determining whether the individual is disabled to the point where he can't engage in any gainful work, the ALJ must use a five-step sequential analysis to evaluate whether a claimant has met the requirements for

disability.[1] Part of that five-step analysis is the determination of the claimant's RFC, which is the key issue here. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001) (quoting *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000)).

Mr. Pappal argues, in part, that the ALJ failed to adequately consider the medical opinion evidence of Drs. Rea and Koch and Dr. Franz, and therefore erred in determining his RFC. ECF 12. The Commissioner contends that substantial evidence supports the ALJ's RFC determination. ECF 13. The Court finds that substantial evidence does not support the ALJ's RFC determination because the ALJ erred in her evaluation of Drs. Rea and Koch's and Dr. Franz's medical opinion evidence.

## II. Standard of review.

Judicial review of the Commissioner's final decision is provided by federal law. 42 U.S.C. § 405(g). The Court has plenary review of all legal issues and will "review the ALJ's findings of fact to determine whether they are supported by substantial evidence." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

---

[1] The five-step process requires the ALJ to assess: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, App'x 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003). If the claimant is determined to be unable to resume previous employment, the burden shifts to the SSA/Commissioner at Step 5 to prove that, given claimant's mental or physical limitations, age, education, and work experience, he is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

"The substantial evidence standard is deferential and includes deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence. To determine whether a finding is supported by substantial evidence, we must review the record as a whole." *Id.*

Substantial evidence is more than a "mere scintilla." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995). That is, the ALJ's decision must be supported by "such relevant evidence as a reasonable mind might accept as adequate." *Id.* The Court is not permitted to weigh the evidence or substitute its own conclusions for those of the factfinder. *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir.1992). The Court can't affirm a determination by substituting its own proper basis—even if it might have reached a different conclusion. *Secs. Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196–97 (1947).

Under 20 C.F.R. § 404.1520c, the ALJ must consider the persuasiveness of each medical source's opinions using five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (which encompasses the length of the treatment relationship); (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical findings. 20 C.F.R. § 404.1520c(c).

In reaching her conclusions as to medical opinion evidence, the ALJ must discuss the two most important steps: supportability and consistency. *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024); 20 C.F.R. § 404.1520c(b)(2).

Under the SSA regulations, supportability is a measure of the relevance of "objective medical evidence and supporting explanations presented by a medical source . . . to support his or her medical opinion(s)." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency measures the agreeableness of medical opinions with "evidence from other medical sources and nonmedical sources in the claim." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

While an ALJ must weigh supportability and consistency when evaluating medical opinion evidence, "[t]o satisfy this requirement, a judge need not reiterate the magic words 'support' and 'consistent' for each doctor." *Zaborowski*, 115 F.4th at 639. The ALJ may "weave" this analysis throughout his decision. *Id.* ALJs are not beholden to any particular language or format. *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). An ALJ "may not reject [a physician's findings] unless he first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected." *Kent v. Schweiker*, 710 F.2d 110, 115 n.5 (3d Cir. 1983) (cleaned up).

**III. The ALJ erred in evaluating Drs. Rea and Koch's and Dr. Franz's medical opinions that Mr. Pappal would be off task for substantial portions of a workday.**

An ALJ is required to consider the consistency of medical opinion evidence. As noted above, consistency measures the agreeableness of medical opinions with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). So, the ALJ must compare the medical opinion evidence with evidence across the entire record, including different types of evidence presented by the same examiner or treating physician.

Here, Drs. Rea, Koch, and Franz opined that Mr. Pappal's limitations would make him regularly absent from work and off task for significant portions of the workday. ECF 4-7, at 407–08, 412. The ALJ found the two opinions at issue (a joint one from Drs. Rea and Koch, and one from Dr. Franz) unsupported and inconsistent with multiple aspects of the record. Upon review, the Court cannot discern the "accurate and logical bridge" to the ALJ's conclusion. *Gamret v. Colvin*, 994 F. Supp. 2d 695, 698 (W.D. Pa. 2014) (Ambrose, J.).

For example, the ALJ noted that "[s]peech level pathology note[s] from October 2020 described [Mr. Pappal] as able to sustain attention for 30-minute increments

and required a five-minute break for cognitive recovery." ECF 4-2, at 30. But "there are a few days where his focus, memory, and speed were less than expected." *Id.* at 30, 34. On one such day in October 2020, Mr. Pappal was observed sustaining attention for only 20-minute increments before needing a short break. ECF 4-7, at 103. On another in July 2021, Mr. Pappal was "unable to focus/distractible," required moderate assistance problem solving, and required support to become motivated and complete a task. *Id.* at 266. On September 9, 2021, Mr. Pappal sustained attention for an entire hour without fatigue and loss of focus. *Id.* at 286. But on September 21, 2021, Mr. Pappal again could only "sustain attention for 30 minutes before fatigue and decreased attention warranted a break." *Id.* at 292.

The Court finds these notes to be consistent with Drs. Rea, Koch, and Franz's opinions that Mr. Pappal would be substantially off task at work. On an average day, Mr. Pappal required a 5-minute break every 30 minutes for cognitive recovery. These breaks necessarily mean that Mr. Pappal would be unable to work, *i.e.*, off task, for a substantial period of an eight-hour workday. This variability in Mr. Pappal's focus is also consistent with Dr. Franz's supporting explanation that Mr. Pappal's symptoms are variable throughout a day. *See id.* at 412. So, while the ALJ explained her reasoning, the Court does not see this evidence as supporting her reasoning. *See Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) ("When a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason.") (cleaned up).

The ALJ also pointed to a March 2024 therapy note in which Mr. Pappal reported that his depression was improving and "that he had been able to manage daily tasks and complete tasks around five to six days per week." ECF 4-2, at 34. This supports Drs. Rea, Koch, and Franz's opinions, not undermines them. Based on this note, Mr. Pappal would be *unable* to manage and complete work tasks at least

multiple days of a month given the variability in his symptoms. The Court can't see the logic in the ALJ's seemingly opposite inference.

In finding Dr. Franz's opinion inconsistent, the ALJ cited a February 2024 note in which Dr. Franz noted Mr. Pappal's cognitive impairment was "overall improved but deficits remain." *Id.* at 35; ECF 4-7, at 440. But this note doesn't prove much without more context. Dr. Franz treated Mr. Pappal since 2019. ECF 4-7, at 356. Mr. Pappal's condition could have improved since 2019 but still been severe enough to prevent him from engaging in regular work. And the deficits remaining could still be severe enough to preclude regular work. This note is too indeterminate to support the inference that Mr. Pappal's condition had improved enough to sustain regular work.[2]

The ALJ also drew inferences from Mr. Pappal's daily life to support her findings. For example, she noted that Drs. Rea and Koch's opinion was inconsistent with the fact that Mr. Pappal cares for his children "on weekends and one day per week." ECF 4-2, at 34.

Again, there is a gap here. That Mr. Pappal is capable of childcare a few times a week doesn't support an inference that he can work on a five-day weekly schedule. This is particularly true when the evidence suggests that Mr. Pappal does not care for his children independently. Counseling records note that Mr. Pappal lives close to his parents, sister, and other relatives "who are able to provide assistance as necessary." ECF 4-7, at 61; *see also id.* at 77; 332 ("Mrs. Pappal reports that she and other family members supported Nathan with increased child care needs . . . ."). In fact, the record repeatedly establishes that Mr. Pappal relies on his family to manage many routine tasks. *See, e.g.*, *id.* at 51 ("Nathan's mother and primary support . . . continues to be involved in treatment planning and reinforcing strategies and

[2] The same is true of records cited throughout the opinion where Mr. Pappal stated he had "no new issues" or "felt well and had no complaints." ECF 4-2, at 28, 35.

systems at home"); 278 (reporting relying on his mother while making a phone call); 343 (reporting speaking to his parents at least two to three times a day to remember his schedule).

Finally, the ALJ considered that Mr. Pappal attempted to return to college in August 2021. ECF 4-2, at 30. Mr. Pappal reported feeling overwhelmed and dropped out shortly after enrollment. *Id.* The ALJ concluded that "[t]he very fact that the claimant would attempt such classes and ReMed providers did not discourage it" is not indicative of limitations precluding more simple work. *Id.*

But ReMed providers didn't exactly encourage reenrollment. They actually expressed concerns over it. An August 3, 2021, counseling note from ReMed reads that "Nathan indicates that he will likely enroll for the Fall semester . . . . *We did review some reasons why this is not a good plan but Nathan persisted with his idea*." ECF 4-7, at 97 (emphasis added). True, the ALJ is right that Mr. Pappal's reenrollment and later withdrawal after being overwhelmed doesn't necessarily prove that Mr. Pappal is disabled. But the opinion also doesn't fully and accurately state the record here to make this point. So, the Court cannot conclude that the ALJ "considered all evidence in [Mr. Pappal's] case record." *Plummer*, 186 F.3d at 433 (citing 42 U.S.C. § 423).

**IV. The ALJ's error was harmful.**

Social-security appeals are subject to harmless-error analysis. *Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). Under the harmless-error standard, remand is warranted only if there is "reason to believe that the remand might lead to a different result. *Timothy J.B. v. O'Malley*, 4:22-CV-1036, 2024 WL 968875, at *4 (M.D. Pa. Mar. 6, 2024) (quoting *Metzger v. Berryhill*, 3:16-CV-1929, 2017 WL 1483328, at *4 (M.D. Pa. Mar. 29, 2017)).

Here, remand might lead to a different result if the ALJ credits the opinions of Drs. Rea, Koch, and Franz that Mr. Pappal would regularly be off task at work. At

Mr. Pappal's hearing, the vocational expert testified that being off task at work 15% of the time would be "work preclusive." ECF 4-2, at 79. If this limitation is added to his RFC, then the ALJ might conclude at step five that Mr. Pappal can't perform any jobs in the national economy.

***

To be fair, this case is a close call. The ALJ's opinion is thorough and well-reasoned. But it stops short on the medical evidence above. In the end, the ALJ might be right that Mr. Pappal isn't disabled. But the Court's job here isn't to decide whether Mr. Pappal is disabled. Its job is to determine whether the ALJ's opinion sufficiently and logically explains her reasoning in accepting or rejecting medical evidence in the record. There is enough of a gap here between the ALJ's opinion and the record on the key issue of cognitive fatigue for the ALJ to take a second look. So, remand is warranted.

## CONCLUSION

For the foregoing reasons, the Court **HEREBY REMANDS** this case to the Commissioner for further proceedings, consistent with this opinion. The Clerk of Court shall **CLOSE** this case.

DATED this 21st day of September, 2026.

BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge